IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VICTOR M.,<br><br>     Plaintiff,<br><br>  vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>     Defendant. | **8:24-CV-456**<br><br>**MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF COMMISSIONER'S DENIAL OF BENEFITS** |

 Plaintiff Victor M.[1] seeks judicial review of the denial of his application for disability insurance benefits and supplemental security income. Filing 1 at 2. Victor M. moved to reverse the defendant Commissioner's final decision, arguing that the ALJ's failure to consider Victor M.'s limitations in standing and walking resulted in a determination of residual functioning capacity not supported by medical evidence. Filing 13 at 5. In response, the Commissioner filed a motion to affirm the Commissioner's final decision. Filing 18. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Victor M.'s motion to reverse.

## I.  INTRODUCTION

### A.  Procedural Background

 On November 30, 2021, Victor M. applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*, and supplemental security income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381 *et seq*. His application alleged disability beginning October 6, 2021, based on his arthritis, asthma, and back condition. Filing 10-5 (Administrative Record (AR) 258). The SSA denied those claims on June 15, 2022. Filing 10-4 at

---

[1] The Court will refer to Plaintiff by first name and last initial to protect his privacy.

45 (AR 177). The SSA again denied the claims upon reconsideration on May 16, 2023. Filing 10-4 at 49 (AR 181). On May 16, 2023, Victor M. filed a written request for review of his denial by an administrative law judge (ALJ) under 20 C.F.R. § 416.1429, which was received on May 19, 2023. Filing 10-2 at 25 (AR 24).

The ALJ held a telephone hearing in which Victor M. amended his alleged onset date to April 1, 2023. Filing 10-2 at 76 (AR 75). The ALJ subsequently found that Victor M. was not disabled under sections 216(i) and 223(d) or 1614(a)(3)(A) of the Social Security Act. Filing 10-2 at 33–34 (AR 32–33). The Social Security Administration (SSA) Appeals Council later denied Victor H.'s request for review of the ALJ's decision. Filing 10-2 at 2 (AR 1). Victor M. then filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision denying his application for disability insurance benefits and SSI benefits. Filing 1.

## B. Factual Background

### 1. The Claimant and His Alleged Disabilities

Victor M. was sixty-one years old at the time of his amended alleged disability date, Filing 10-3 at 3 (AR 102), which classifies him as a person of advanced age who is closely approaching retirement age (60–65 years old) under 20 C.F.R. §§ 404.1563(e), 404.1568(d)(4), and 416.964. He has a high school education, placing him in the highest educational ability under 20 C.F.R. § 404.1564 and 20 C.F.R. § 416.964. Filing 10-6 at 5 (AR 277). Victor M. lives alone and takes care of a dog. Filing 10-3 at 13 (AR 112).

Victor M.'s last day worked was October 6, 2021. Filing 10-3 at 13 (AR 107). The ALJ determined that Victor M. had not engaged in substantial gainful activity since April 1, 2023, the amended alleged onset date. Filing 10-2 at 27 (AR 26). Victor M. claims to be disabled due to a degenerative disc disease of the lumbar spine, and he testified that he is unable to perform a full range of sedentary work. Filing 1.

Victor M. argues that the ALJ failed to consider properly his ability to stand and walk during the workday. Filing 13-1 at 1. The ALJ determined that Victor M. had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except: he can occasionally balance, stoop, kneel, crouch, crawl, and climb; and he can tolerate frequent exposure to extreme cold, extreme heat, humidity, vibration, atmospheric conditions, moving mechanical parts, and unprotected heights. Filing 10-2 at 29 (AR 28). Victor M. argues that the ALJ ignored the standing and walking limitations that several of Victor M.'s medical providers recommended and that doing so left the RFC unsupported by substantial evidence. Filing 13-1 at 7.

The ALJ acknowledged that Victor M.'s medically determinable impairments could reasonably be expected to cause Victor M.'s alleged symptoms. Filing 10-2 at 29 (AR 28). Nevertheless the ALJ found Victor M.'s statements concerning the intensity, persistence, and limiting effects of these symptoms to be inconsistent with the evidence in the record. Filing 10-2 at 29 (AR 28). The ALJ determined that some of the medical conclusions in the record were based wholly on subjective allegations because of their inconsistency with the rest of the record and lack of supporting explanation. Filing 10-2 at 31–32 (AR 31).

Victor M. argues that the ALJ dismissed the functional evidence of his ability to stand and/or walk and then determined that he had a greater ability to stand and walk than any of the rejected evidence indicated. Filing 13 at 7. Victor M. contends that even when the evidence in the record is "mixed," there must still be something in the record to demonstrate his ability to function. Filing 20 at 2. The Court's discussion of the factual background will focus on medical records and determinations related to these arguments.

3

2.  *Medical Records and Evidence*

a.  Treating Physicians' Opinions of Victor M.'s Physical Symptoms

Victor M. initially alleged disability due to asthma, arthritis, and a back condition. Filing 10-6 at 4 (AR 276). His asthma is well-controlled with the use of a daily long-acting inhaler. Filing 11-1 at 166 (AR 568); filing 11-1 at 174 (AR 576); filing 11-1 at 179 (AT 581). Victor M. has been diagnosed with arthritis in the left foot and left hip but demonstrates normal range of motion and full strength. Filing 11-1 at 148, 169 (AR 550, 571). Therefore, the focus of his motion to reverse and remand the final decision of the Commissioner is his degenerative disc disease of the lumbar spine. Filing 10-2 at 28 (AR 27).

A 2015 MRI revealed that Victor M. has grade III spondylolisthesis and multilevel moderate-to-severe spinal canal stenosis at L5. Filing 11-1 at 120 (AR 522). In February 2023, a second MRI revealed the same conditions. Filing 11-1 at 156 (AR 558). Dr. James B. Gill, MD, noted that Victor M.'s symptoms were essentially unchanged from the 2015 MRI. Filing 11-1 at 149 (AR 551). Dr. Gill recommended ongoing conservative treatment following the February 2023 MRI, but Victor M. declined. Filing 11-1 at 149 (AR 551).

Victor M. has been shown to have an irregular gait on some occasions. Filing 11-1 at 116, 161, 179 (AR 518, 563, 581). Recently, however, he has demonstrated full strength, full range of motion in the lumbar spine, and a steady gait. Filing 11-1 at 148, 167–68, 171 (AR 550, 569, 573). In March of 2023, Ian Pierce, APRN, noted that Victor M. was able to ambulate with a steady, slow, and even gait without difficulty. Filing 11-1 at 168 (AR 570). Later, in July of 2024, Victor M. reported that he was able to walk up to three miles a day with his dog. Filing 10-2 at 11 (AR 10).

Dr. M. Olubunmi Dada, MD, PhD, prescribed Victor M. fifty milligrams of the painkiller tramadol daily in February of 2021, when Victor M. reported pain in his lower back that radiated

down both legs and worsened when lying down. Filing 11-1 at 23–25 (AR 425–27). In December of 2021 Dr. Dada diagnosed Victor M. with chronic back pain and prescribed daily meloxicam and twice daily tizanidine. Filing 11-1 at 5 (AR 407).

In January of 2022, Dr. Dada opined that Victor M.'s back pain limited him to lifting twenty pounds, sitting for four hours, standing for two hours, and walking for two hours each day. Filing 11-1 at 17 (AR 419). Then, in June 2023, Dr. Dada opined that Victor M. could stand for four hours of an eight-hour workday, did not need to elevate his legs while sitting, did not need to recline throughout the workday, and did not need a cane. Filing 11-1 at 214 (AR 616). Two months later, in August 2023, Dr. Dada found that Victor M. should only stand or walk for two hours per day, should elevate his legs when sitting, and could never crouch or crawl. Filing 11-1 at 230 (AR 632).

As to Victor M.'s mental functioning, Dr. Dada opined in June 2022 that Victor M. would be "off task" for more than 25% of the typical workday, indicated that he had no concerns about any psychiatric conditions regarding Victor M., and opined that Victor M. could maintain concentration for more than two hours before requiring a break. Filing 11-1 at 140 (AR 542). In June of 2023, however, Dr. Dada indicated that Victor M. could only maintain concentration for 15 minutes before requiring a break and would likely be absent for four or more days of work per month. Filing 11-1 at 229 (AR 631). Dr. Dada's opinion states that these limitations stem from side effects of the medications Victor M. is taking, fatigue, and the effects of pain. Filing 11-1 at 230 (AR 632). Dr. Dada also stated for the first time that Victor M. required a cane. Filing 11-1 at 231 (AR 633). Dr. Dada's reports do not reconcile the minimal change in Victor M.'s back condition from 2015 to 2023 with the marked change in his medical opinion. Filing 11-1 at 149 (AR 551).

Jonathan Meyer, MD, examined Victor M. in May of 2022, noting a mildly decreased range of motion with mild limitations for sitting and standing. Filing 11-1 at 117 (AR 519). He opined that Victor M. could not lift more than fifteen pounds but could walk without limitation. Filing 11-1 at 117 (AR 519). In March of 2023, Ian Pierce, APRN, similarly noted that Victor M. had a mild to moderate loss of range of motion. Filing 11-1 at 168 (AR 570).

  b. Self and Lay Assessments of Victor M.'s Functionality

Victor M. reports being in constant pain that prevents him from prolonged standing, bending, stooping, climbing, and extended reaching. Filing 10-3 at 30 (AR 129). He testified that his pain medications make him drowsy and thus prevent him from driving. Filing 10-2 at 85 (AR 84).

In a February 2022 function report Victor M. indicated that his conditions did not affect his ability to dress, bathe, care for himself, or feed himself, and that he did not use a cane. Filing 10-6 at 26, 33 (AR 298, 305). In his October 2023 hearing with the ALJ, however, Victor M. testified that he had been dealing with difficulties getting dressed for at least two years. Filing 10-2 at 92–93 (AR 91–92).

In April of 2023 Victor M. reported that he occasionally uses a cane if it is slick or raining outside, and that he can only walk a few blocks before he needs to take a few minutes of rest. Filing 10-3 at 30 (AR 129). Later, in his October 2023 hearing with the ALJ, Victor M. testified that he had always used a cane whenever he was out of the house during the year-and-a-half leading up to the hearing. Filing 10-2 at 91, 93 (AR 90, 92). No providers recorded observing Victor M. using a cane, and no provider recommended that Victor M. should use a cane until Dr. Dada did so in August of 2023. Filing 11-1 at 231 (AR 633).

Victor M. reported only being able to lift up to fifteen pounds and walk two to three blocks in February of 2023. Filing 10-6 at 50 (AR 322). In July of 2024, however, he indicated to Dr.

Peace and Dr. Cichomski Guersvik that he had extended his walking distance to up to three miles per day. Filing 10-2 at 11 (AR 10).

Victor M. testified at the October 2023 hearing that he could sit for fifteen to twenty minutes without pain and could walk for ten to fifteen minutes without pain. Filing 10-2 at 88 (AR 87). Victor M. stated that he has received a deep tissue massage and acupuncture pain treatment for his lower back and hips twice a month since 2017. Filing 10-6 at 53 (AR 325).

### c.   Evaluations of Victor M.'s Medical History by State Consultants

Steven Higgins, MD, determined on June 15, 2022, that Victor M. could occasionally lift twenty pounds, could frequently lift ten pounds, and that Victor M. must periodically alternate sitting and standing to relieve his pain. Filing 10-3 at 14 (AR 113). Based upon this determination, Disability Examiner Clare Kincaid found that Victor M. was incapable of performing his past relevant work (PRW) as either a retail manager or a warehouse laborer. Filing 10-3 at 16 (AR 115). Kincaid nevertheless found that Victor M. is not disabled and could perform sedentary work as defined under 20 C.F.R. § 404.1567. Filing 10-3 at 13 (AR 112). On April 11, 2023, Disability Examiner Brian Kastl similarly found that Victor M. was unable to perform his PRW due to being unable to stand for more than two hours or lift more than twenty pounds. Filing 10-3 at 25 (AR 124). Kastl also determined that Victor M. was not disabled and could be expected to transfer his managerial job skills to other, less physically demanding positions. Filing 10-3 at 26 (AR 125).

### 3.   The ALJ's Impairment Findings

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is determined to be disabled when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 416.920(b), an ALJ will engage in a five-step sequential analysis to determine whether a claimant is disabled. *See Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (citing *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)). When conducting the five-step analysis, the ALJ considers the following:

> (1) Whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley*, 9 F.4th at 628 (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal citation omitted). The ALJ must continue the analysis unless the claimant is found not to be disabled at steps one, two, four, or five, or is found to be disabled at steps three or five. *See* C.F.R. § 404.1520(a).

At the first step, the ALJ will find the claimant not to be disabled if he or she is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). Gainful activity is defined as "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). In this case, the ALJ determined that Victor M. had not engaged in substantial gainful activity since April 1, 2023, the amended alleged onset date. Filing 10-2 at 27 (AR 26).

At step two, the ALJ determines whether the claimant has a severe impairment or a combination of severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "Severe" impairments are those that limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c).

8

The ALJ in this case determined that Victor M. had the following severe impairment: degenerative disc disease of the lumbar spine. Filing 10-2 at 28 (AR 27).

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairments satisfy the criteria of severity of one of the impairments listed at 20 C.F.R., Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 416.920(d). Victor M. did not claim that his impairments satisfied the criteria of any of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ in this case determined that Victor M.'s degenerative disc disease of the lumbar spine did not meet listing 1.15 or listing 1.16 of 20 C.F.R. Pt. 404, Subpt. P, App. 1. Filing 10-2 at 28–29 (AR 27–28). Victor M.'s back condition did not meet listing 1.15 because there was no evidence of a compromise of a nerve root in the lumbar or cervical spine; no need for an assistive device for walking; and no inability to use both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements. Filing 10-2 at 29 (AR 28). Victor M.'s back condition failed to meet listing 1.16 due to a lack of imaging or surgical findings indicating compromise of the cauda equina with lumbar spinal stenosis. Filing 10-2 at 29 (AR 28).

### 4. *The ALJs' RFC Findings*

At step four, the ALJ determines the claimant's residual functioning capacity (RFC), in light of the claimant's past relevant work. 20 C.F.R. § 416.920(A)(4)(iv). RFC is defined as "the most [the claimant] can still do despite their limitations." 20 C.F.R. § 416.945(a)(1). The claimant is generally responsible for providing the evidence that the ALJ uses to determine the claimant's RFC. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)); *see also* 20 C.F.R. §§ 416.912(a)(1), 416.945(a)(3). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v.*

*Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)); *cf. Lockwood v. Colvin*, 627, F. App'x 575, 577 (8th

Cir. 2015) (quoting *Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir. 2007)) ("[I]n evaluating a

claimant's RFC, an ALJ is not limited to considering medical evidence exclusively."). Concerning

Victor M.'s RFC, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) except: he can occasionally balance, stoop, kneel,
> crouch, crawl, and climb; and he can tolerate frequent exposure to extreme cold,
> extreme heat, humidity, vibration, atmospheric conditions, moving mechanical
> parts, and unprotected heights.

Filing 10-2 at 29 (AR 28).

Next, the ALJ will consider the claimant's RFC in conjunction with the claimant's

vocational background to determine whether the claimant is still able to perform his or her past

relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960(a). If the claimant is able to perform his

or her past relevant work, then the ALJ will find that the claimant is not disabled. 20 C.F.R. §

416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15

years, was substantial gainful activity, and lasted long enough for the claimant to learn to do it. 20

C.F.R. § 416.960(b)(1); *see generally* 20 C.F.R. § 416.965(a).

First, the ALJ found that while Victor M.'s impairments could reasonably be the cause of

his alleged symptoms, Victor M.'s statements regarding their persistence, intensity, and limiting

effects were inconsistent with the evidence in the record. Filing 10-2 at 29 (AR 28). State agency

medical consultants opined that Victor M. could stand and walk four hours in an eight-hour

workday. Filing 10-3 at 32 (AR 131). The ALJ found this opinion only partially persuasive due to

the lack of evidence in the record of symptoms or objective abnormalities that would limit Victor

M.'s tolerance for standing and walking. Filing 10-2 at 31 (AR 30). The ALJ instead relied on

Victor M.'s routine demonstration of full strength and stable gait, and Victor M.'s inconsistent

reporting and seeking of treatment to determine that Victor M. is capable of performing his PRW. [Filing 10-2 at 31](#) (AR 30).

The ALJ also found the opinion of consultative examiner Jonathan Meyer, MD, that Victor M. could frequently sit and stand but could not lift more than fifteen pounds unpersuasive. [Filing 10-2 at 31](#) (AR 30). First, the ALJ determined that the opinion was unsupported by Dr. Meyer's examination and analysis. Second, the ALJ found the opinion relied largely on Victor M.'s subjective allegations that were inconsistent with Victor M.'s recent treatment records and his varying symptom reports and pursuit of treatment. [Filing 10-2 at 32](#) (AR 31).

Further, the ALJ found Dr. Dada's opinions about Victor M.'s physical and mental limitations to be unsupported by his associated treatment notes and inconsistent with the normal objective findings and Victor M.'s own statements. [Filing 10-2 at 32](#) (AR 31). For example, Dr. Dada indicated a need for Victor M. to lie down during the day in June 2022 but not in 2023; indicated manipulative limitations in June 2023 but changed that opinion in August 2023; and indicated no mental limitations in June 2022, but a year later indicated that Victor M. could not maintain concentration for even thirty minutes. [Filing 10-2 at 32](#) (AR 31). Victor M. had never reported memory or concentration issues before. [Filing 10-6 at 32](#), 50 (AR 304, 322). The ALJ therefore found Dr. Dada's opinions generally unpersuasive. [Filing 10-2 at 33](#) (AR 33).

Vocational expert Stephen Schill classified Victor M.'s most recent work as "manager of a retail store" (922.687-058). [Filing 10-2 at 96](#) (AR 95). The ALJ asked Mr. Schill whether a hypothetical person with Victor M.'s RFC could perform Victor M.'s past work. [Filing 10-2 at 97](#) (AR 96). Mr. Schill replied that such a person could perform Victor M.'s past work as the manager of a retail store. [Filing 10-2 at 98](#) (AR 97). When the ALJ added the limitation to Victor M.'s RFC of only being able to stand for four hours in an eight-hour workday, Mr. Schill opined that such a

11

person would not be able to perform Victor M.'s past work. Filing 10-2 at 98 (AR 97). Based on

the testimony of Mr. Schill, along with the ALJ's RFC finding, the ALJ concluded that Victor M.

could perform his past relevant work and therefore is not disabled. Filing 10-2 at 33 (AR 32).

## II. LEGAL ANALYSIS

### A. Standard of Review

After a claimant has sought review of an ALJ's decision by the Appeals Council, the

claimant is entitled to judicial review of the ALJ's decision in federal district court. *Smith v.*

*Berryhill*, 139 S. Ct. 1765, 1772 (2019); *see also* 42 U.S.C. § 405(g). On review, the district court

determines "whether substantial evidence on the record as a whole supports the ALJ's decision."

*Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quoting *Medhaug v. Astrue*, 578 F.3d 805,

813 (8th Cir. 2009) (internal citation omitted)). Substantial evidence has been described as "more

than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting

*Consol. Edison Co.*, 305 U.S. at 229); *see Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir.

2019) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

Under the substantial evidence standard, the district court will consider "evidence that

detracts from the [ALJ's] decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854

F.3d 1016, 1020 (8th Cir. 2017) (citing *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

However, the district court will not reverse the ALJ's decision "simply because some evidence

supports a conclusion other than that reached by the [ALJ]." *Id.* The district court will affirm the

ALJ's decision "[i]f, after reviewing the record, the [district] court finds it possible to draw two

inconsistent positions from the evidence and one of those positions represents the ALJ's findings."

*Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789)

Moreover, the district court will not reverse the ALJ's decision simply because the district court "would have come to a different conclusion" on its own. *Id.* (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (internal citations omitted)); *see also Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) ("We will not reverse the [ALJ's] decision 'merely because substantial evidence supports a contrary outcome.'")). Stated another way, the district court "will only disturb the ALJ's decision 'if it falls outside the available zone of choice.'" *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (internal citation omitted)). An ALJ's decision "is not outside the zone of choice because [the district] court might have reached a different conclusion if [it was] the initial factfinder." *Id.* The district court should also defer to the ALJ's credibility determinations as long as they are supported by good reasons and substantial evidence. *See Despain*, 926 F.3d at 1028.

Additionally, the district court is tasked with determining whether the ALJ's decision "complies with the relevant legal standards." *Lucas v. Saul*, 960, F.3 1066, 1068 (8th Cir. 2020) (internal citations omitted) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)). In conducting its review of the ALJ's decision under the substantial evidence standard, the district court "must review the record in the light most favorable to [the ALJ's] determination." *Dols*, 931 F.3d at 748 (alteration in original) (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

"The RFC determination is a 'medical question' that 'must be supported by some evidence of [Victor M.'s] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th

Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); 20 C.F.R. § 416.945(a)(1). The "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386,391 (8th Cir. 2016) (citation omitted).

### B.  The ALJ Supported the RFC with Substantial Evidence

Victor M. asserts that the ALJ failed to support the RFC with substantial evidence and based the RFC on his lay interpretation of medical reports rather than functional evidence. Filing 13 at 5. Specifically, Victor M. argues that the ALJ ignored the standing and walking limitations that several of Victor M.'s medical providers recommended, and that this left the ALJ's RFC determination unsupported by substantial evidence. Filing 13 at 7. The Court does not agree.

Victor M. argues that the ALJ should have included some limitation on standing and walking because "all of the medical opinions in the record indicated [Victor M.] had some limitation in his ability to stand or walk." Filing 13 at 9. Victor M. argues that the ALJ's RFC assessment is conclusory because the ALJ found all the medical opinions regarding Victor M.'s physical limitations unpersuasive, discounted Victor M.'s subjective complaints, and relied on his lay interpretation of medical reports instead of relying on functional evidence. Filing 13 at 7–10. This Court disagrees. Viewing the record in the light most favorable to the ALJ's decision, the ALJ's decision falls within the available zone of choice and is supported by substantial evidence on the record as a whole. *Ross*, 92 F.4th 775, 778. The ALJ based the RFC determination on Victor M.'s ability to independently perform daily activities; his frequently-noted full range of motion, full strength, and steady gait; unexplained inconsistencies in the medical record; and inconsistencies between Victor M.'s subjective allegations and the evidence in the record. Filing

10-2 at 30–32 (AR 29–31). The Court concludes that in reaching his RFC determination, the ALJ properly considered this evidence.

### 5. *The RFC Is Supported by Medical Evidence*

Victor M. first cites *Noerper v. Saul*, arguing that the ALJ failed to support the range of light work in the RFC with "some medical evidence of [Victor M's] ability to function in the workplace." 964 F.3d 738, 744. Victor M. asserts that the ALJ failed to identify evidence regarding Victor M.'s functioning and instead substituted his own inferences of what the medical evidence demonstrated when determining Victor M.'s RFC. Filing 13 at 8. In this case, the ALJ was unpersuaded by the medical opinions of Dr. Dada and Dr. Meyer and only partially persuaded by the opinions of the state agency medical consultants who reviewed the claim. Filing 10-2 at 31–32 (AR 30–31).

The ALJ's refusal to adopt the medical opinions in the record, however, does not leave his RFC determination unsupported by medical evidence of Victor M.'s ability to function in the workplace. The ALJ's RFC determination is a decision that is reserved to the agency and is neither delegated to medical professionals nor determined exclusively based on medical records. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, . . . is not the type of 'medical opinion' to which the Commissioner gives controlling weight."). In this case, the ALJ's skepticism of the medical opinions in the record was based on medical evidence that did not support those medical opinions. For instance, Victor M. was treated by a pain management provider in 2015. Filing 10-2 at 30 (AR 29). Victor M. did not return, however, until March 21, 2023, at which time he declined multiple conservative recommendations. Filing 10-2 at 30 (AR 29); Filing 11-1 at 149–56 (AR 551–58). The ALJ also noted that between Victor M.'s 2015 and 2023 MRIs his symptoms were largely unchanged, and that Victor M. had reported in a March 2023 consultative examination that his

pain was well-controlled on medication. Filing 10-2 at 30 (AR 29). Considering Victor M.'s last day worked was October 6, 2021, these pieces of medical evidence support Victor M.'s ability to function in the workplace. Filing 10-3 at 13 (AR 107).

Moreover, in *Noerper*, the Eighth Circuit Court of Appeals found the record "fatally lacking" because "[t]here [was] simply no reliable evidence providing a basis that [the claimant] can stand or walk for 6 hours in an 8-hour workday . . . the absence of evidence to suggest the accuracy or propriety of the 6-hour limitation demonstrates that the ALJ did not fulfill the duty to fully develop the record." 964 F.3d at 747. Unlike in *Noerper*, the ALJ in this case did not include in the RFC that Victor M. could stand or walk for six hours in an 8-hour workday. Filing 10-2 at 29 (AR 28). Additionally, "[a] two-hour standing restriction is not an absolute bar to performing 'light work.'" *See Schwandt v. Berryhill*, 926 F.3d 1004, 1013 (8th Cir. 2019) (citing *Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir. 1998)). State agency medical consultants initially opined that Victor M. could perform light work while standing and walking for two hours in an 8-hour workday, Filing 10-3 at 5, 13, 24 (AR 104, 112, 123), but then increased this standing and walking period to four hours on reconsideration. Filing 10-3 at 32 (AR 131). Victor M.'s PRW as the manager of a retail store is at the light physical demand level as generally performed and as Victor M. performed it. (DOT #185.167-046); Filing 10-2 at 97 (AR 96). Victor M. indicated on a work history form that his last job required him to lift twenty pounds at the heaviest and ten pounds frequently, stating that the job required "very minimal lifting." Filing 10-6 at 27 (AR 299). In this case, Victor M. has demonstrated full strength, full range of motion in the lumbar spine, and a steady gait. Filing 11-1 at 148, 167–68, 171 (AR 550, 569, 573). He has reported that his pain is well-controlled on medication, filing 11-1 at 166 (AR 568), and that he can do everything necessary to care for himself. Filing 10-2 at 30 (AR 10). Victor M. worked until October 6, 2021,

filing 10-3 at 13 (AR 107), and his MRI in 2023 showed minimal change in his condition from 2015 to 2023. Filing 11-1 at 149 (AR 551). All these factors indicate that Victor M. is capable of performing his PRW.

6. *The ALJ Properly Discredited the Medical Opinions of Dr. Dada and Dr. Meyer*

Because the "interpretation of physicians' findings is a factual matter left to the ALJ's authority," *Mabry v. Colvin*, 815 F.3d 386,391 (8th Cir. 2016) (citation omitted), the ALJ was free to disregard the unsupported aspects of both Dr. Meyer's and Dr. Dada's medical opinions. The Eighth Circuit has generally recognized that "[a] conclusory report from a treating physician may still be entitled to controlling weight if it is accurate when viewed in the context of the medical record." *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019) (citing *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003)). However, "[a]n ALJ properly discredits such a report . . . if it is unsupported by the medical record." *Id.* (citing *Stormo v. Barnhart*, 377 F.3d 801, 805–806 (8th Cir. 2004)). In this case, the ALJ found the medical opinions of Dr. Meyer and Dr. Dada unpersuasive because they were unsupported by objective findings, medical analysis, and the more recent treatment records, and they appeared to rely heavily on Victor M.'s subjective allegations. Filing 10-2 at 31–32 (AR 30–31).

The ALJ properly discredited Dr. Meyer's report. An ALJ may assign little weight to a treating physician's opinion if it is "conclusory or inconsistent with the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016); *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). Dr. Meyer opined that Victor M. could frequently sit and stand but could not lift more than fifteen pounds. Filing 11-1 at 117 (AR 519). The ALJ was unpersuaded by this limitation because it was simply accompanied by the notation: "This is due to back pain with sciatica, mild limitation only." Filing 11-1 at 117 (AR 519). In addition, ALJ found this limitation to be inconsistent with Victor M.'s varying symptom reports and pursuit of treatment, and inconsistent with Dr. Meyer's report

17

that Victor had normal strength except for mild distal weakness in Victor M.'s right leg. Filing 11-1 at 117 (AR 519). The ALJ found Dr. Meyer's opinion "neither supported by his own examination of the clamant or his own analysis." Filing 10-2 at 31–32 (AR 30–31). Because Dr. Meyer's opinion was conclusory and seemingly disconnected from the examination, the ALJ was free to assign little weight to it. *Julin*, 826 F.3d at 1088.

The ALJ was similarly justified in finding Dr. Dada's opinions generally unpersuasive because of their conclusory nature and inconsistency with the record as whole. The ALJ found Dr. Dada's sudden change in medical opinion to be unsupported by the associated treatment notes, inconsistent with the other evidence of record, and inconsistent with each other without explanation. Filing 10-2 at 32 (AR 31). The Eighth Circuit Court of Appeals has clearly stated that a medical checkbox opinion is "entitled to relatively little evidentiary value on its face" when it is conclusory and cite[s] no medical evidence, and provide[s] little to no elaboration.'" *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (quoting *Wildman v. Astrue*, 596 F3d 959, 964 (8th Cir. 2014). In this case, Victor M. had consistently reported that he had no issues with memory or concentration. Filing 10-6 at 32, 50 (AR 304, 322). Dr. Dada similarly reported that Victor M. had no issues with concentration in June 2022, filing 11-1 at 136 (AR 538), yet opined that Victor M. could not maintain concentration for more than thirty minutes in June 2023. Filing 11-1 at 222 (AR 624). Dr. Dada indicated that Victor M.'s significant concentration decline was due to his back pain. Filing 11-1 at 222–23 (AR 624–25). The only support for this change appears to be Victor M.'s allegation he has a lower ability to concentrate when he has back pain. Filing 11-1 at 221 (AR 623). That justification is especially surprising because Victor M. reported in a March 2023 consultative examination that his pain was well-controlled on medication. Filing 10-2 at 30 (AR 29). Considering Victor M.'s largely unchanged symptoms from 2015 to 2023, Dr. Dada's

medical opinion is inconsistent with the rest of the record and the ALJ properly discounted it. *Julin*, 826 F.3d at 1088. Further, Dr. Dada indicated manipulative limitations in June 2023 but no such limitations in August 2023, and he reported a need for Victor M. to lie down during the day in June 2022 but not in June 2023. Filing 10-2 at 32 (AR 31). The ALJ appropriately found this trend inconsistent with Dr. Dada's overall conclusions concerning Victor M.'s limitations and discounted Dr. Dada's medical checkbox opinion. *Julin*, 826 F.3d at 1088; *see also Swarthout*, 35 F.4th at 611 (explaining that the ALJ may give little weight to conclusory checkbox opinions).

### 7. The ALJ Appropriately Considered the Intensity, Persistence, and Limiting Effects of Victor M's Symptoms

The ALJ properly considered the degree of Victor M.'s impairments. The determination as to the severity of impairments is not based exclusively on medical evidence or subjective complaints. Rather, applicable regulations enumerate categories of evidence that aid the determination of intensity, persistence, and the limiting effects of symptoms.[2] Similar factors guide the analysis of whether subjective complaints are consistent with the medical evidence. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The Eighth Circuit in *Polaski v. Heckler* created a standard for evaluating subjective complaints that requires an ALJ to consider all evidence of the following factors: "(i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness,

---

[2] In identical terms, 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) list "Factors relevant to ... symptoms, such as pain, which [the Commissioner] will consider":

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

and side effects of medication; and (v) the claimant's functional restrictions." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (citing *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)); *see also Polaski*, 739 F.2d at 1322. However, "[a]n ALJ need not expressly cite the *Polaski* factors when [. . .] the judge conducts an analysis pursuant to 20 C.F.R. § 416.929, because the regulation 'largely mirror[s] the *Polaski* factors.'" *Vance*, 860 F.3d at 1120 (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)); *see* 20 C.F.R. § 416.929(c)(3)(i)–(iv), (vii).

Regarding the first *Polaski* factor, the claimant's daily activities, the ALJ took Victor M.'s ability to engage in ordinary life activities independently to be a strong indication that Victor M. retains the capacity to perform the physical and mental tasks of everyday basic work activity. Filing 10-2 at 30 (AR 29). Victor M. admits the ability to independently perform personal care tasks like bathing, dressing, personal hygiene, feeding, and toileting. Filing 10-2 at 30 (AR 29). Victor M. also admits the ability to prepare simple meals, shop, drive, clean, do laundry, vacuum, and mop. Filing 10-2 at 30 (AR 29). Moreover, progress notes from a July 2024 visit to the Omaha VA Medical Center report that Victor M. was able to walk up to three miles with his dogs. Filing 10-2 at 11 (AR 10).

Concerning the *Polaski* factor of the duration, frequency, and intensity of Victor M.'s pain, the ALJ the ALJ found that his alleged symptoms could reasonably be expected to result from his impairments, but the ALJ determined that Victor M.'s statements regarding the intensity, persistence, and limiting effects of those symptoms to be inconsistent with the evidence in the record. Filing 10-2 at 29 (AR 28). Victor M. treated with a pain management provider in 2015 but did not return for additional treatment until March of 2023. Filing 11-1 at 145 (AR 547). James Gill, MD, noted largely unchanged symptoms and suggested conservative ongoing treatment, but Victor M. declined. Filing 11-1 at 149 (AR 551).

As to Victor M.'s functional limitations, another *Polaski* factor, the ALJ relied on inconsistencies between the record and Victor M.'s subjective allegations to determine that Victor M. was not as limited as alleged. Filing 10-2 at 30 (AR 29). A reviewing court "normally defer[s] to the ALJ's credibility determination." *Grindley*, 9 F.4th at 630 (citing *Halverson*, 600 F.3d at 932) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination" (citation omitted). In this case, Victor M. testified in October 2023 that he had always used a cane whenever he was out of the house during the year-and-a-half leading up to the hearing. Filing 10-2 at 91, 93 (AR 90, 92). No providers recorded observing Victor M. using a cane, and until August of 2023, no provider recommended that Victor M. should use a cane. Filing 11-1 at 230 (AR 632). The ALJ thus determined that the suggestion that Victor M. needed a cane lacked any objective support in the record, was inconsistent with the intensity of his pain, and was inconsistent with his functional limitations. Filing 10-2 at 31 (AR 30). The ALJ also noted that Victor M. was frequently noted to have full range of motion in the lumbar spine and full strength, a steady gait, and negative straight leg testing, while only occasionally having tenderness and decreased range of motion in the lumbar spine, decreased range of motion in the lumbar spine, and abnormal gait. Filing 10-2 at 30 (AR 29). Thus, the ALJ gave good reasons for dismissing testimony that Victor M. needed a cane or had problems with his gait. *Grindley*, 9 F.4th at 630; *Halverson*, 600 F.3d at 932.

Regarding the *Polaski* factor of the dosage, effectiveness, and side effects of Victor M.'s medication, the ALJ noted that Victor M. reported his pain was well-controlled at a March 2023 consultative examination. Filing 10-2 at 30 (AR 29). The ALJ also discredited Victor M.'s allegation that his medications made it difficult for him to concentrate. Filing 10-2 at 31 (AR 30). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."

*Polaski*, 739 F.2d at 1322. Until his October 2023 hearing, Victor M. had never reported a decline in his ability to concentrate. Filing 10-2 at 32 (AR 31). The ALJ noted that Victor M. had taken the same dosage of the same pain medications for two years and considered Victor M.'s ability to perform substantial gainful activity during that period as evidence that Victor M.'s medications are not as limiting as he alleged. Filing 10-2 at 32 (AR 31). Thus, applying the *Polaski* factors, ALJ pointed to ample evidence in the record supporting his determination that the intensity, persistence, and the limiting effects of Victor M.'s impairments were not as severe as he had alleged. The ALJ was within his discretion when he discounted Victor M.'s subjective complaints about his pain. *Polaski*, 739 at 1322; s*ee also Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) ("Once a claimant has demonstrated the existence of an impairment that could reasonably be expected to produce the alleged symptoms, the question becomes whether the claimant's subjective allegations regarding the extent of her symptoms are credible.")

   *8. The ALJ Properly Relied on the Vocational Expert's Testimony*

   Victor M. also claims the ALJ erred when he declined to adopt certain portions of the vocational expert's testimony. Filing 13 at 7. "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." *Goff v. Barnhart*, 421 F.3d 785, 794 (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt*, 250 F.3d at 625. Nevertheless, "the ALJ may exclude any alleged impairments that [he] has properly rejected as untrue or unsubstantiated." *Id.* In this case, the ALJ excluded the limitations of standing and/or walking for a total of four hours out of an eight-hour workday and alternating between sitting and standing every two hours because he found the opinions of Dr. Dada, Dr. Meyer, and the state agency medical consultants who reviewed the claim to be generally unpersuasive. Filing 10-2 at 98 (97); Filing 10-2 at 31 (AR 30); *see Cruze v. Chater*,

85 F.3d 1320, 1323 (8th Cir. 1996) ("The ALJ's hypothetical question need include only those impairments that the ALJ finds are substantially supported by the record as a whole." (quotations and citations omitted)). The ALJ concurred with the vocational expert that someone of Victor M.'s age, education, and work experience who could perform work at the light exertional level, could occasionally balance, stoop, kneel, crouch, crawl, and climb, and who could tolerate frequent exposure to extreme cold, extreme heat, humidity, vibration, atmospheric conditions, could perform Victor M.'s PRW as the manager of a retail store. Filing 10-2 at 33 (AR 32). The ALJ relied on Victor M's indication in a work history form that the job required "very minimal lifting" when adopting the vocational expert's classification that this job would be performed at the light physical demand level. Filing 10-2 at 33 (AR 32). Because none of the abovementioned limitations would preclude Victor M. from performing his past work as a retail manager, and the vocational expert classified this job at the light physical demand level, the ALJ's RFC determination that Victor M. can perform light work is supported by substantial evidence. *Miller v. Shalala*, 8 F.3d 611, 614 (8th Cir. 1993) (citing *Rappaport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991) ("The VE's Testimony amounts to substantial evidence if the question asked precisely stated the impairments that the ALJ accepted as true.")).

### III. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision in Victor M.'s case. Accordingly,

IT IS ORDERED:

1. Victor M's Motion for an Order Reversing the Commissioner's Decision, filing 13, is denied;

2. Bisignano's Motion for an Order Affirming the Commissioner's Decision, filing 18, is granted;

3. The Commissioner's decision is affirmed; and

4. The Court will enter a separate judgment.


Dated this 15th day of September, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge